Good morning, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Sanguino. Causing the death of a pregnant female by participating in an abortion is not manslaughter, as the New York manslaughter statute specifically allows for this form of liability, and the documents submitted by the government do not foreclose the possibility that Mr. Sanguino was convicted under this subsection. Counsel, I wonder if it did. I did not understand your argument, and maybe you can help me understand it now, for why we shouldn't be using the modified categorical approach instead of the categorical approach. Here's my interest. I look at page 73, and he's got five counts. Correct. And then I look at page 72 of the excerpts, and it says that that's a sentence in commitment, that's the judgment form, and it says he was convicted of manslaughter one. Well, that's count one. So I know that what he was convicted of was count one. And then I look at the indictment, and it says that on July 30, 1995, with the intent to cause physical injury, he struck Lozama in the eye with a metal plant stand and thereby inflicted a wound which penetrated Lozama's brain and thereby caused his death. So it looks like a pretty clean modified categorical approach. We don't have to even worry about whether generic manslaughter includes killing a woman during a late-term abortion. Your Honor, I welcome going straight to the modified categorical approach, because I disagree with that analysis. I know you do, and I read your argument, but I didn't follow it. Okay. First of all, this sentence in commitment form, if you look down at 72, on the bottom, it says it's a true extract from the minutes. So this does not appear on its face to be what is considered a judgment. It appears to be only an extract of the minutes. So that's more analogous to what this Court has rejected as far as abstracts of judgments or minutes. Rejected? We've rejected which case? You rejected it specifically in Snellenberger. I understand that went en banc, so that's still up in the air. The opinion's been vacated. Yes, it's vacated. I think the analysis that was later used in Vidal still supports that, and the analysis that's in Shepard itself, saying what documents you can and cannot rely on. So the sentence in commitment form used by Queens County in New York is not sufficient because why? Because it only states that it's a true extract from the minutes. It's nothing that the judge is actually affirming that he found certain facts. There's nothing on this record to show the factual basis of what the guilty plea is. And just going through this document. I don't understand nothing. It says what crime he was convicted of, and we can tell from the indictment just what he did. But you have no connection between this sentence in commitment and the indictment. There's nowhere on this form. It says manslaughter one right up there at the top where they have the list of crimes that the individual is being sentenced for. Correct, and manslaughter one includes the committing an abortional act on a female. But not for this guy because we have the indictment that says just what the manslaughter one was. Maybe I can approach it a different way. Look at the indictment. The indictment lists the specific count as 125.20-1. Correct? That's on page 73. If you go back to the judgment, the judgment is different from the indictment. It says 125.20 manslaughter one, which that just relates to the entire statute. In U.S. v. Vidal, this court said if you have a judgment and an indictment, the judgment has to have the specific words as charged in the indictment. I'm missing something here. The judgment says 125.20 and the manslaughter one charge in the indictment says 125.20. 125.20-1. But why does the 1 matter? Because that is relating to the specific subsection of 125.20. But the subsection? 125.20 has four or five different subsections, one of which is the abortional act subsection. There is a reference in theóI understand your argument that the abstract is insufficient. Yes. And then you get to point 2. If, let's say, Snellenberger comes down and says, well, an abstract is okay, there's one reference in it to subsection 1 of the statute. In the indictment, yes. Of the indictment. And then the judgment does not have the reference to a specific subsection. Well, that's what I wondered. It had a reference to that hyphenóthere's a hyphen 1 in one place. Let's see if I can find the reference to it, which makes me think that it refers to the first subsection. I think what you can clarify is the title of this section is manslaughter in the first degree and has several different ways to accomplish that act, meaning manslaughter 1. It applies to several different subsections. So there are several different ways to commit manslaughter 1. Okay. On page 73, on that first line where it says 125.20-1, you don't read the dash 1 asóthat refers to what? That refers to subsection 1 of the statute. Of the statute. Yes. Okay. Which is not the abortions, actually. That would be 3. Correct. Okay. So that would beóand that's the first paragraph of the indictment. Yes. Okay. Is it possible to plead in New York, to plead guilty to something that has not been alleged in the indictment? It would be possible in two different ways from my understanding. You could have a superseding indictment that comes down later on. Okay. Or you could plead guilty to an information. And the thing is, if you go back to the sentence and commitment, there's nothing to indicate what he pled guilty to on the sentence and commitment. There's no reference to the indictment. Even though we've got five paragraphs which all relate to this incident with a metalóputting a metal plant stand into somebody's head, it is possible that he pled guilty to committing an abortion? Correct. I mean, I think in Shepard itself, everyone knew in that case that all theówhat he burglarized were dwellings. But he had to justó We had another case, and I cannot remember the exact context. So you probably do, being more expert and can distinguish it for me. The Supreme Court basically said you can't cut somebody some slack on a hypothetical possibility that's not realistic. Something may be hypothetically possible under the statute, but if it's a remote and unrealistic possibility, then you can't use that to say thatóI think it was that the statute's not generically within the category. That's Duaneus Alvarez. And in Grissel and in Vidal, this Court has said, well, if it's apparent on the statutory language that it's overbroad, then you can rely on that and you don't have to rely on a legal imagination or come up with cases. But the fact that the terms of the statute are expressed, providing for, in this case, liability to abortional act, that's enough. The other question is, I think I'm implying that Duaneus, however, is limited to the categorical analysis. In no way does it apply to the modified categorical analysis. That's what you do there is under Shepard. Help me with one more step. Okay. I would like to try to save some time for rebuttal. We'll give you one minute anyway. Thank you. You can answer this question. The case that we have vacated, where the mandate is not issued, says that an abstract of judgment is not good enough for modified categorical approach. This document at page 72 does not say it's an abstract of judgment. It says it's a true extract from the minutes. As I understand the words in their ordinary usage, an extract means something copied from something else. An abstract means something that summarizes something else. For example, an academic article will have an abstract at the top. It's just a one-paragraph summary of the medical research or whatever it was. An extract from an article in, say, the New England Journal of Medicine will be a quote of a paragraph. Why should we treat this extract like an abstract? Because, well, first of all, Snellenberger held that a minute order could not be used, and several other cases besides Snellenberger have held minute orders can't be used. So if this is just an extract from the minutes, which is a minute order, then it can't be used. But I think the most significant point that I haven't talked about enough is that U.S. v. Vidal, in the modified categorical approach, specifically holds that when you have a judgment and an indictment, to use the indictment, you have to have the words on the judgment as charged in the indictment. This document doesn't reference the indictment in any way, and that's required under Vidal. Thank you, counsel. We'll give you one minute. Thank you. I had this spike going over. Counsel? Good morning. May it please the Court, Mark Rahe for the United States. Your Honors, I think this case typifies somewhat of the absurdity that the modified categorical approach, or let alone the Taylor categorical analysis, has reached in this circuit. I mean, I think it's already been somewhat alluded to in the earlier questioning. Well, it was alluded to by the district court, but the modified categorical approach and the categorical approach have been handed to us by the Supreme Court. But I think where the problem is, Your Honor, it's almost getting to the point where the government is being held to too high a standard of proof. We have to prove this by clear and convincing evidence. Hold on a second. I have some problems with that body of law, too. I never understood why Justice Blackmun used the word generic, since it's not a traditional term of art, and it's caused us a lot of trouble. But we're stuck with it. We've got that whole body of law. True. Why, given that body of law, could you go ahead? Absolutely. And trust me, my entire argument was going to be framed in the context of current law, but what I'm saying is that the defense is even reading it incorrectly. We don't have to prove this beyond a reasonable doubt. We don't have to prove this beyond any possible doubt. We have to prove this by clear and convincing evidence. When arguments come up that, oh, this defendant might have pled to a superseding document that has some completely different charge from the five counts that are in the document in front of you, I would say that's speculation. That's rank speculation, and that's not the kind of burden that the government has to bear. What do we do with Vidal? I mean, we've got all this language. It's only a few months old, and it's an unbanked court, and it says if the judgment doesn't say or the plea or something, I plead guilty as charged in the indictment, then it won't hook up. A couple things, Your Honor. First of all, that language in Vidal says when the record consists only of a charging document and a judgment. Here we have a third document. So I believe that Vidal was concerned when there was the absolute bare minimum of documents. Here, when you look at excerpts of records 72 through 76, you see nothing but consistency. It's always referred to as 125.20, and even if it doesn't have the little one after it, when you look to that charging document, there is only one charge under 125.20. Well, don't you, if that's the charge, then you have to face the abortion question, don't you? Well, not under the modified. I don't believe so because if that's, you know, another thing, another point about Vidal, the statute there or the charging document was just charged the entire generic statute of the charge offense.  This here specifically says that the defendant took a plant stand, penetrated the eye and the brain. Oh, yeah, I know what it says, but to convict, you didn't have to prove that, did you? Well, that was the charge. I mean, I don't know if I understand that question. That was the charge. Well, let's say that it turns out that he caused the death in some other way. Would that be a fatal variance? I don't believe so. I agree. I think a lot of that language may well be surplusage. It's not something you have to – you don't have to prove all the facts in the indictment. This is true, but it does at least match up with the elements of that first subdivision, when somebody with the intent to injure somebody ends up resulting in their death. If you can somehow tie – if you can find a plea or a judgment that says either as charged in the indictment or guilty of the statute subdivision one, then you've got it made. We would, but I would say that's not – that's sufficient, but that's not necessary. In this case, if you look at Excerpt of Record 76, it specifically says count one, and then it says manslaughter one, 12520, and it also lists it as a Class B felony. When you look at the five charges in that document, that's the only Class B felony listed is that first-degree manslaughter charge, and the only facts alleged to support it are not the abortional act, but the planned stand for EDI. So, again, and another thing, a couple points about Vidal. Vidal was a NOLO plea, and under California law when somebody – Vidal was what? It was a NOLO contender, no contest. Oh, yeah. And a big part of the rationale in that case was when somebody pleads no contest, under California law they don't admit the facts. That's not the case here. Another thing about Vidal, as my opponent pointed out, that was a People v. West plea. California case law has specifically held that when somebody pleads to a People v. West plea, they don't necessarily plead to what was charged in the indictment. It can be any reasonably related offense. I'm not aware, I know Judge Bybee asked, I'm not aware of any analogous provision of New York law that holds as much. So this isn't a NOLO plea. This isn't a case where the charging document was in the generic language of the entire statute. There's plenty of reasons to find that the modified approach was satisfied here. But I would actually submit with the remainder of my time, Your Honors, if you think that's the thornier issue, if you want the easier issue, I think it is the categorical approach. And you don't even need to get to all this, and you don't even need to wait for Snellenberger. And the reason I say that is when we look at what the generic definition of manslaughter is, we look to Lefebvre in large part. Lefebvre specifically identifies that there are two separate types of generic manslaughter. And this is at section 15.4 of his treatise, page 520. It says involuntary manslaughter may be divided into two separate types, which may be labeled, one, criminal negligence manslaughter, or two, unlawful act manslaughter. And then in the next section of the appellant's opening brief, the only mention of Lefebvre is section 15.4. That dealt with the first one, which Lefebvre calls criminal negligence manslaughter. There's absolutely no treatment of the second type that Lefebvre talks about. However, if this Court looks to the next section of Lefebvre's treatise at 15.5a at page 531, Lefebvre talks about unlawful act manslaughter having been around for centuries. And then he also says that even though the doctrine has become a little less popular as time goes on, it is still embodied by half of the states. And not only that, but by the Federal Government as well. And this was something that came up in the Court below. Now, the unlawful act then can be one that has no intent requirement of any kind? Lefebvre talks about that. This one actually does have an intent. So if that's a concern to the Court, if that's a baseline, there has to be an intent to cause a miscarriage. I'm not so sure it does have an intent. If a doctor performs an abortion on a consenting woman thinking that, as best he can tell, it's a less than six months pregnancy, he's a mistake of fact, and she dies, it's manslaughter. But the question is, what was the intent? That subsection, 125.20, has the intent to cause miscarriage. It's not a strict liability crime, Your Honor. But I would also ---- But it's not, of course, the intent to cause a miscarriage if the woman consents and is under six months. It's not a crime. True. But, you know, when I come back then, Lefebvre says that still counts as unlawful act of manslaughter. It may seem harsh on its face, but that's the nature of the doctrine. In fact, he analogizes it a bit to felony murder. There are many critics of the felony murder doctrine who say the same thing. Just because somebody's engaged in a felony and somebody happens to die, doesn't that seem harsh and unfair? Well, it might seem to some, but the fact of the matter is the majority of jurisdictions still abide by that rule, and that is the test. That person intended to engage in a felony, and my doctor didn't. And that's why that's felony murder doctrine. But, again, I'm not ---- Is there no scienter requirement in New York law that the doctor doesn't have to know that it's a 24-week or older fetus and he kills the woman? I don't know to that degree, Your Honor. All I know is that it does have that, you know, it does have ---- It would matter for your responses to Judge Canby's questions. Well, no, absolutely, but ---- If there's a scienter requirement, then it's not, gee, she lied to me. She told me it was that she only got pregnant three months ago. I had no idea she was pregnant six months ago. It would help, but what I'm saying is what LaFave says under unlawful manslaughter, it doesn't require a minimum scienter. That's what distinguishes this from the first kind of manslaughter, and that's what defense ---- I don't know if you understood my question. I was asking about New York law. Correct. You must have looked at all the squibs, which I don't have before me, since we don't have books anymore. You must have looked at all the squibs and found out what does he enter for subsection 3 of this New York law is, whether the doctor has to know or reasonably believe or it doesn't matter if he knows that she's been pregnant for more than 24 weeks when he kills her. I don't know if he has to know that or not, Your Honor. What I know is that the scienter is the intent to cause the miscarriage, and it may well be that that's the only scienter. But again, purposes of this ---- Are you just speculating or are you talking about New York cases that you know of? I'm telling you flat out, Your Honor, I don't know the answer to that question. Okay. I don't know if the doctor needs to know. Don't know is the answer to that. Okay. But what I'm saying, though, is for purposes of this categorical analysis, the scienter doesn't matter. That's what LaFave goes on to say. What LaFave says, the unlawful act of manslaughter, the lynchpin there is causation. Well, it sounds to me as though you don't know if there's a scienter requirement, and you're telling us it doesn't matter if there's a scienter requirement or not, but it might matter to us whether there's a scienter requirement or not. When you ask me what's a scienter requirement, I say does that require any mental state? The intent to cause the miscarriage, that's what I see as the scienter. If you're asking me specifically about a knowledge requirement, that's the part I don't know. But I put knowledge and intent under the ambit of scienter. That's why that is my response to that question. Thank you, counsel. Whereas a miscarriage isn't in most circumstances a crime. Maybe not. But again, Your Honors, I'm not making this up. We have to look to what the generic definition is. LaFave says that causation is the lynchpin of the unlawful act of manslaughter. This statute expressly has a causation requirement in it. It's not just, oh, somebody, a woman happens to die during an attempted abortion. No, it has to be a causation. If LaFave says that unlawful act of manslaughter doesn't have a minimum scienter, and if LaFave says that causation is the lynchpin, and this statute has causation expressly in it, I would submit that that's generic manslaughter. And the final thing I'd point out, in footnote 11, LaFave even talks about the manslaughter that arises from a botched abortion. And he specifically says, again, this is Section 50. Abortions are fine under New York law. Justifiable if the woman is within 24 weeks from commencement of the pregnancy. Correct. So the unlawful act is only unlawful if it is after that 24 weeks and not to save the mother's life. So, therefore, that is what defines it as an unlawful act, and it's exactly what the district court said, too, in Excerpt to Record 44 to 45. Thank you, counsel. Just briefly on the modified categorical approach, I want to clarify one thing. In U.S. v. Vidal, that complaint in that case absolutely charged Mr. Vidal as a principal only. There's no reference to accessory after the fact. And this court found that unless you had as charged in the indictment, that was not sufficient. This is the exact case here. Why doesn't it distinguish it that he never admitted he was a principal only? He didn't admit anything at all. He just pleaded no law. Well, I think here you have – based on these documents, we don't know what happened at the guilty plea hearing. We don't have a plea agreement establishing what Mr. Sangria was going to admit to. We don't know what the judge found. All we have is this judgment not even referencing a count but only a statute, and there's nothing to match the statute that he actually pled to this specific charge. But moving on to the other point of unlawful act manslaughter, first of all, the key thing that Mr. Rahe said is only half jurisdictions still have an unlawful act manslaughter. And further, LaFarve notes that – I thought it was routine. It used to be, at least when I was practicing, if a drunk driver killed somebody, he got charged with manslaughter, even though drunk driving was then a misdemeanor in all circumstances. I guess, at least according to LaFarve, and he cites, I think, 25 statutes no longer have such a misdemeanor manslaughter rule. And even those that still do, do have a mens rea element of being conscious of a risk to life. And this is true even in the federal statute for manslaughter, for involuntary manslaughter, which does include an unlawful act. The court just reads its own jury instructions. Unlawful act and the other circumstances are in the first element. The last element, with an and, is that they have a consciousness of the risk involved. So even if there is this theory still of unlawful act, there is still, in the majority of jurisdictions, an element that you have to be conscious of the risk of life. Thank you, counsel. United States v. San Bruno is submitted.
judges: Canby, Kleinfeld, Bybee